The substance of the plaintiff's complaint in this action is that the defendant, by its wrongful act, neglect or default caused the death of his son, a boy about eighteen years of age, which occurred on the 11th of September, 1895, in the defendant's station at Cape Vincent by the collapse of the building in a storm, whereby the young man lost his life. The complaint alleges that at the time of the accident the deceased was lawfully and rightfully in the building, or station, and that the accident occurred without any fault or negligence on his part. The defendant's answer admitted that it had charge of the building and maintained it as a railroad station, and that in connection therewith the defendant maintained a wharf and steamboat landing, where a great many people congregated daily with the knowledge and permission of the defendant.
The building in question was erected in 1852, as a part of a hotel. In the record it is sometimes called a train shed, but for all practical purposes it was the defendant's railroad station at that point. It was a long, frame building, fronting the river, with quite an extensive dock in front, where boats and vessels of all kinds connected with the railroad trains and received and discharged passengers upon the dock. This dock or wharf was connected with the station by doors through which the public passed to and from, and who then entered this building to take the train or the boat on the river. The question of fact tried was whether this building in its original construction was reasonably safe, and whether, if so, it had by the lapse of time and its exposure to the elements become so much decayed and structurally weak as to be unsafe against the elements and storms. A great many witnesses testified upon this question, pro and con, and there was the usual conflict in the evidence. *Page 568 
The building collapsed in a very severe wind storm, accompanied with thunder, lighting and rain. The storm was so severe as to uproot large trees, blow down several buildings and unroof others in the neighborhood. There was some proof in the case tending to show that the destruction of the building in question was due to the fact that it had been allowed to become unsafe, in that some of its timbers were rotten and decayed, and in other respects it had become dilapidated and consequently weak. After a motion for a nonsuit had been denied the court submitted the whole case to the jury, which resulted in a verdict for the plaintiff, that has been unanimously affirmed at the Appellate Division. Aside from the admissions in the defendant's answer the plaintiff gave proof to show how the deceased came to be in the building at the time it collapsed. This testimony is uncontradicted, and was to the effect that he was at the train when it came into the building to meet a young lady who alighted from it and shook hands with him. He then accompanied her through the building and on to the dock to one of the boats at the landing; and that is the last that was seen of him before the building fell.
The verdict of the jury and the unanimous decision of the court below affirming the judgment, leave very few questions open for review in this court. We must assume that there was evidence supporting, or tending to sustain the finding of the jury which imputed negligence to the defendant in using a building for a railroad station which was unsafe. Whether the building was suitable for the purposes for which it was used, except for the extraordinary character of the storm which destroyed it, is a question that this court must take as settled by the verdict of the jury, since the Constitution and the statute command us to treat the verdict as conclusive in that respect. The power of this court to review the judgment in this case is limited to the exceptions taken at the trial, and only one of these has been argued by the learned counsel for the defendant.
He insists that if the deceased was in the building at the *Page 569 
time it fell, out of mere curiosity, or seeking his own pleasure, then he was a mere licensee and was there at his own risk; that the defendant owed him no legal duty under such circumstances, except to refrain from doing any affirmative act which would injure him. Without examining that question, or assuming to decide that the proposition as stated is law, under all circumstances, we will assume it to be correct for all the purposes of this case. But we are unable to see how the principle, even if taken in the broad terms stated, has been violated here. In the first place, when we consider the allegations of the complaint, the admissions of the answer and the uncontradicted testimony of the witness who testified that the deceased was in the station to meet a passenger at the train and escort her to the boat, it is quite plain that there are no facts in the case to which the principle could be applied. So far as this case is concerned the question is, therefore, purely an academic one. We understand the learned counsel for the defendant to contend that the question with respect to the purpose for which the deceased was in the building at the time of the accident, should have been submitted to the jury. But the court did submit the whole case to the jury, and charged specially that if the deceased was guilty of any negligence on his part there could be no recovery. The defendant's counsel made no request to have any question whatever submitted to the jury, and in view of the fact that there was really no conflict in the evidence, as to the purpose for which the deceased was in the building at the time of the accident, and that no request was made to submit that question to the jury, it is difficult to find any reason for complaint now on the part of the defendant.
With respect to the duty imposed by law upon the defendant, the court instructed the jury as follows: "In the construction of a public building there is always a duty imposed by law upon the party that constructs it, to make it reasonably safe and secure, so as to stand the storms and changes of weather that are likely to occur in the vicinity where the building may be. That was the duty in this case with reference *Page 570 
to this defendant." The defendant's counsel excepted to this part of the charge. The argument in support of this exception is not justified by the language of the court. The learned counsel construes the passage quoted as, in substance, a direction to the jury that the defendant owed this duty to the deceased, whether he was lawfully or rightfully in the station at the time of the accident, or not. In other words, he construes the language as a direction that the defendant owed a duty to persons in the station at the time, who were there out of curiosity, or in the pursuit of pleasure, and hence were, as he says, mere licensees who were there at their own risk. It would, I think, be impossible to impute to the trial judge an intention to convey to the jury any such proposition from the language employed. We should not detach this portion of the charge from the context and ascribe to it a meaning which the language, taken as a whole, will not bear, and which, in view of the proofs and admissions at the trial, could not have been intended by the court. This passage from the charge, when taken in connection with the entire charge and the proofs and admissions in the record, was nothing more than a correct statement of the law concerning the duty of the railroad in constructing and maintaining a building for use as a station, where the traveling public, at least, are permitted to congregate. The court withheld no question from the jury that arose upon the evidence, and if it was supposed at the close of the case that there was any proof that would warrant the jury in finding that the deceased was not lawfully in the building, it was open to the defendant to call for such instructions in that respect as were thought proper. In this court the jury must be deemed to have passed upon that question as well as all others.
The learned counsel for the defendant has called our attention to various remarks and comments by the learned trial judge during the course of the trial which, it is said, were highly prejudicial to the defendant. It is claimed that they were of such a character as to require the reversal of the judgment, even though no exception was taken. If this *Page 571 
court had power and discretion to review all the proceedings in the case, as the court below had, in order to determine whether justice had been done, we would feel bound to say that some of the remarks and comments referred to were quite objectionable. But our jurisdiction is limited to questions of law, and the matters to which our attention has been directed do not present any such question.
After a careful examination of the whole case we think that the record does not present any legal error which would warrant us in interfering with the judgment, and it must, therefore, be affirmed, with costs.
PARKER, Ch. J., BARTLETT, HAIGHT, MARTIN, VANN and LANDON, JJ., concur.
Judgment affirmed.